UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                            :

DEMOS P. DEMOPOULOS, STEPHEN MALONE, :
and MICHAEL SPINELLI, as Union Trustees and :
Fiduciaries of the LOCAL 854 PENSION FUND, :
                                            :

                Plaintiffs, :

                        :

        -against- :

                        :

JOHN CURCIO, WILLIAM CASSESE, and :
KENNETH BARRETT, as Employer Trustees of the :
LOCAL 854 PENSION FUND, :
                                            :

                Defendants. :

-------------------------------------------------------------------- X

**REPORT AND
RECOMMENDATION**
1:20-cv-02151 (BMC)(PK)

Peggy Kuo, United States Magistrate Judge:

On May 12, 2020, Demos P. Demopoulos, Stephen Malone, and Michael Spinelli (collectively, "Plaintiffs") commenced this action against John Curcio, William Cassese, and Kenneth Barrett (collectively, "Defendants"). (Compl., Dkt. 1.) Plaintiffs are the union trustees and Defendants are the employer trustees of the Local 854 Pension Fund ("Pension Fund" or "Fund"). (*Id.* ¶¶ 5, 8.) Plaintiffs assert that Defendants violated the terms of the Trust Agreement governing the Pension Fund ("Trust Agreement"); the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

Among the acts alleged to constitute these violations are Defendants' delivery of a Notice of Intention to Arbitrate dated April 20, 2020 ("Apr. 20, 2020 Notice") to Plaintiffs. (*Id.* ¶ 1; *see* "Apr. 20, 2020 Notice," Ex. A to Compl., Dkt. 1.) At the time they filed the Complaint, Plaintiffs also moved for an Order to Show Cause for Preliminary Injunction, to enjoin Defendants from seeking

arbitration pursuant to the Apr. 20, 2020 Notice.  ("PI Mot.," Dkt. 2.)

On June 2, 2020, Defendants filed a Motion to compel arbitration of all of Plaintiffs' claims and to dismiss Plaintiffs' fifth cause of action, brought under the LMRA.  ("Mot. to Dismiss," Dkt. 15.)

The Honorable Roslynn R. Mauskopf referred both motions to me for a report and recommendation.  (*See* May 18, 2020 Order; June 3, 2020 Order.)  For the reasons stated herein, I respectfully recommend that Plaintiffs' motion for a preliminary injunction be denied, that Defendants' motion to dismiss be denied, and that Defendants' motion to compel be granted as to all claims.

## FACTUAL BACKGROUND

The Fund was established pursuant to the terms of collective bargaining agreements between Local 854 and various employers.  (Compl. ¶ 7.)  The Fund is overseen by a Board of Trustees ("Board") and governed by the Trust Agreement.  (*Id.* ¶ 2; "Trust Agreement," Ex. C to Compl., Dkt. 1.)  The Fund "is maintained for the purpose of collecting and receiving contributions and providing retirement benefits" in accordance with the Trust Agreement.  (Compl. ¶ 7.)

Prior to the events underlying this lawsuit, "Local 854 was subsumed into Local 553 . . . pursuant to a series of mergers between affiliated locals of the International Brotherhood of Teamsters [('I.B.T.')] . . . ."  (*Id.* ¶ 12.)  Although Local 553 ("the Union") is the surviving union, its members still participate in the Pension Fund, which continues to be governed by the Trust Agreement.  (*See id.* ¶¶ 5, 13.)

Defendants own school bus companies that operate in New York City.  (*Id.* ¶ 8.)  Prior to March 18, 2020, the employees of Mar-Can Transportation Company, Inc. ("Mar-Can"), which is owned by Defendant Cassese, were members of the Union and, thus, eligible to participate in the Pension Fund.  (*See id.* ¶¶ 7, 10, 22, 23.)  On March 18, 2020, Mar-Can's employees voted for a different

union to be their bargaining representative.  (*Id.* ¶ 23.)  The results of the election were certified by the National Labor Relations Board ("NLRB") and, as a result, the Union was removed as Mar-Can employees' bargaining representative.  (*Id.* ¶ 23.)

The vote by Mar-Can's employees to remove Local 553 as its union representative "effected a complete withdrawal of Mar-Can from the Pension Fund," which obligated Mar-Can "to pay withdrawal liability to the Fund for its proportionate share of the Fund's unfunded vested benefits." (*Id.* ¶¶ 24, 25.)

Plaintiffs allege "[u]pon information and belief" that "on or about the end of April or beginning of May [2020], Mar-Can informed its employees that they were being furloughed due to the ongoing COVID-19 pandemic, school closures, and the subsequent loss of Mar-Can's contract with the NYC Board of Education to provide school bus services."  (*Id.* ¶ 26.)  Plaintiffs also allege "[u]pon information and belief" that "Mar-Can currently does not employ any individuals performing covered work requiring contributions to be made to the Pension Fund."  (*Id.* ¶ 27.)[1]

On March 31, 2020, the Board held a meeting at which all trustees; the Fund's two counsel, Friedman & Anspach ("F & A") and Mintz & Gold; the Fund's administrator; and the Fund's actuary were present.  (*Id.* ¶ 28.)  At the meeting, Demopoulos moved "to immediately prepare withdrawal liability assessments for all employers who had ceased to have an obligation to contribute to the Fund under a collective bargaining agreement . . . ."  (*Id.* ¶ 29.)  Although Defendants agreed that Mar-Can had withdrawn from the Fund, they took the position that it would be more beneficial for Fund participants if the Board entered into a participation agreement with Mar-Can rather than assess withdrawal liability against it.  (*Id.* ¶ 30.)  Plaintiffs disagreed, and Demopoulos renewed the motion

---

[1] Defendants note that "(1) Mar-Can's furlough is temporary, and (2) the same can be said for most, if not all, of the Fund's contributing employers during the COVID shutdown."  (Defendants' Memorandum of Law in Opposition to PI Motion and in Support of Motion to Dismiss and Compel Arbitration ("Def. Op. Mem. of Law") at 13 n.10, Dkt. 18.)

to assess withdrawal liability against Mar-Can; however, the motion failed because Defendants did not vote. (*Id.* ¶ 31.) Although Cassese was present, he abstained from voting. (*Id.* ¶ 32.)

At the Board's next meeting on April 20, 2020, the trustees, the Fund's two counsel, the Fund's administrator, and the Fund's actuary were present. (*Id.* ¶ 33.) Demopoulos renewed his motions to assess withdrawal liability against Mar-Can. (*Id.* ¶ 34.) Spinelli seconded the motion, and Curcio and Barrett voted against it, with Cassese abstaining. (*Id.*) The motion again failed. At the same meeting, Barrett moved for the Pension Fund to enter into a participation agreement with Mar-Can ("Participation Agreement Motion"), rather than assess withdrawal liability against the company. (*See id.* ¶ 40.)

According to Plaintiffs, although the Pension Fund's actuary "opined on the value of a participation agreement" during the discussion of the Participation Agreement Motion, there was no "formal actuarial analysis or specific written proposal for a participation agreement presented to the Union Trustees." (*Id.* ¶¶ 41, 42.) Plaintiffs voted against the Participation Agreement Motion, Curcio seconded it, and Cassese did not vote. (*Id.* ¶¶ 43, 44.) That motion failed as well.

After the meeting, Defendants Barrett and Curcio withdrew their opposition to assessing withdrawal liability against Mar-Can, and therefore, the motion to assess withdrawal liability passed. (Compl. ¶ 36.)

On April 22, 2020, Plaintiffs received an email from one of the Fund's attorneys at Mintz & Gold that attached the Apr. 20, 2020 Notice, signed by Curcio, Cassese, and Barrett, which stated, "pursuant to the respective trust documents, the Employer Trustees of the Local 854 Pension [Fund] intend to seek arbitration of the below-listed issues . . . ." (*Id.* ¶¶ 46, 47.) The following issues were listed:

1. Whether, based upon the recommendations of the Local 854 I.B.T. Pension Fund's actuary and consultant in considering Mar-Can Transportation's request to enter into a Participation Agreement to preserve and continue its contribution obligation to Local 854 I.B.T. Pension Fund under the circumstances and subject

to applicable law, the Board of Trustees of the Fund[] should approve: (i) entering into a retroactive Participation Agreement with Mar-Can Transportation that is equivalent to the contribution obligations under its Collective Bargaining Agreement, (ii) avoiding the trigger or assessment of a withdrawal liability against Mar-Can Transportation as the result of such Participation Agreement and subject to its payment of contributions to the Local 854 I.B.T. Pension Fund in accordance with such Participation Agreement, and (iii) further taking all necessary actions to effectuate the foregoing.

2. Whether, by voting against the motion that encompassed points (i)-(iii) above at the April 20, 2020 Board of Trustees meeting for reasons not in the best interest of the Local 854 I.B.T. Pension Fund and against the advice of the Local 854 I.B.T. Pension Fund actuary, the Union Trustees breached their fiduciary duties to the Local 854 I.B.T. Pension Fund?

(Apr. 20, 2020 Notice.)

On May 11, 2020, Defendants commenced an arbitration before the American Arbitration Association ("AAA"). (*See* Demand for Arbitration, Ex. B to Compl. at ECF 27-28, Dkt. 1; Def. Op. Mem. of Law at 8.) The arbitration was subsequently held in abeyance. (Ex. D to Declaration of Jeffrey Pollack ("Pollack Decl."), Dkt. 16-4.)

## PROCEDURAL BACKGROUND

Plaintiffs filed the Complaint on May 12, 2020, asserting five causes of action. The first four claims allege that in proposing and voting for the Participation Agreement Motion and serving the Apr. 20, 2020 Notice, Defendants breached various fiduciary duties under ERISA. (*See* Compl. ¶¶ 49-84). Plaintiffs' fifth cause of action alleges that in proposing and voting for the Participation Agreement Motion and serving the Apr. 20, 2020 Notice, Defendants breached the terms of the Trust Agreement and are liable under Section 301 of the LMRA. (*Id.* ¶¶ 85-96).

Plaintiffs also filed the PI Motion, requesting an order under Rule 65 of the Federal Rules of Civil Procedure to enjoin Defendants from commencing the arbitration sought in the Apr. 20, 2020 Notice.[2] (*See* Pl. PI Mem. of Law at 1.) Additionally, Plaintiffs seek "a declaratory judgment finding

---

[2] The Memorandum of Law states that Plaintiffs seek issuance of a "permanent injunction against such arbitration," but at this stage, it is more appropriate to consider the request as one for a preliminary injunction. (Plaintiffs' Memorandum of Law in Support of PI Motion ("Pl. PI Mem. of Law") at 29, Dkt. 3.)

that the arbitration demand raised by Defendants violates both ERISA and the terms of the Trust Agreement." (*Id.* at 28.)

On June 2, 2020, Defendants filed an opposition, urging the Court to deny the PI Motion and compel Plaintiffs to arbitrate the questions raised in the Apr. 20, 2020 Notice. (Def. Op. Mem. of Law at 1, 10.) At the same time, they filed a Cross Motion to dismiss Plaintiffs' fifth cause of action and to compel arbitration of all claims. (*See id.* at 1.)

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### I. Legal Standard

"A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.'" *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (quoting *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (citations omitted)) (citation to summary order). "To obtain a preliminary injunction, the moving party must show '(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.'" *Schwartz v. Cerner Corp.*, 804 F. App'x 85, 87 (2d Cir. 2020) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)) (citation to summary order).

"To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *N.Y. Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)). Irreparable harm must be "actual and imminent, not remote or speculative." *Id.*

Typically, the moving party must first demonstrate irreparable harm because it "is the '*sine qua non* for preliminary injunctive relief.'" *JBR*, 618 F. App'x at 33 (quoting *USA Recycling, Inc. v. Town of*

*Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995)).  Irreparable harm in the context of a motion to enjoin an arbitration turns on "the merits of the petitioner's claim—the arbitrability of the dispute."  *See Int'l Bhd. of Elec. Workers Loc. Union No. 3 v. Charter Commc'ns*, 277 F. Supp. 3d 356, 365 (E.D.N.Y. 2017).  "[I]rreparable harm exists when a party is forced to arbitrate a dispute that is not subject to arbitration, but no irreparable harm arises from arbitrating disputes that are subject to arbitration."  *Pike Co. v. Tri-Krete Ltd*, 349 F. Supp. 3d 265, 272 (W.D.N.Y. 2018); *see also Stop & Shop Supermarket Co. v. United Food & Com. Workers' Union Loc. 342*, 407 F. Supp. 2d 515, 518 (S.D.N.Y. 2005) ("Whether Plaintiff faces irreparable harm, has a likelihood of success on the merits, and whether the claim is a fair ground for litigation all depend on whether the terms of the arbitration agreement cover the [underlying dispute].");  *Medicine Shoppe Int'l, Inc. v. Mitsopoulos*, No. 04-CV-5207 (ERK)(MDG), 2006 WL 8438209, at *3 (E.D.N.Y. May 5, 2006) ("[W]here there is a valid agreement to arbitrate, no irreparable harm results from compelling the resisting party to arbitrate."), *R&R adopted*, 2006 WL 8438198 (E.D.N.Y. May 12, 2006).

The second part of the preliminary injunction inquiry requires the moving party to show either a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citation omitted).  "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction."  *Id.*  The moving party has the burden to "establish that 'the balance of hardships tips *decidedly*' in its favor . . . ."  *Id.* (citation omitted).

"Finally, the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

## II.   Analysis

### A.  *Irreparable Harm*

The first issue for the Court to consider is whether permitting the arbitration to proceed will cause irreparable harm to Plaintiffs.  The Second Circuit is clear: "A party suffers no legally cognizable injury at all, let alone irreparable injury, by being compelled to engage in arbitration to which he has contractually agreed." *Lawrence v. Wilder Richman Secs. Corp.*, 417 F. App'x 11, 14 (2d Cir. 2010) (citation to summary order).

In assessing this question, the Court must decide whether the parties entered into a valid arbitration agreement, and if so, whether the issues in the Apr. 20, 2020 Notice fall within the scope of the arbitration agreement.  *See Jillian Mech. Corp. v. United Serv. Workers Union Loc. 355*, 882 F. Supp. 2d 358, 364 (E.D.N.Y. 2012).  Related to these issues is whether the parties "clearly and unmistakably" agreed for an arbitrator to decide issues of arbitrability.  *Id.* at 365.

### 1.  **Whether the Parties Entered into an Agreement to Arbitrate**

The "initial task is to determine whether [the parties] entered into an agreement to arbitrate. Only when an agreement to arbitrate is found to exist does a court proceed to decide whether a given dispute falls within the scope of that agreement." *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 25 (2d Cir. 1996).

It is undisputed that the parties entered into an agreement to arbitrate through the Trust Agreement's arbitration clause ("Arbitration Clause"), which states in relevant part:

> If the Board of Trustees is unable to agree upon or to settle any of the matters that arise during the administration of this Fund, then upon written notice by the Union Trustees or Employer Trustees, as the case may be, of the intent to arbitrate, the Board of Trustees shall promptly agree upon an impartial arbitrator to decide the matters in

dispute.  If the Board of Trustees . . . is unable to agree upon the selection of an impartial arbitrator, then either the Union Trustees or Employer Trustees may petition the American Arbitration Association for a list of impartial arbitrators.  The arbitrator shall promptly hear and render a final decision upon the matter in dispute, but said arbitrator shall not have the power or authority to modify the basic provisions of the Agreement or the Plan.

(Trust Agreement, Art. XII.)

The parties do not deny that they entered into the Trust Agreement or otherwise contend that the Arbitration Clause is not valid.  (*See, e.g.*, Def. Op. Mem. of Law at 22); *see also Demopoulos v. Curcio*, No. 20-CV-1208 (RRM)(PK), 2021 WL 799330, at *5-6 (E.D.N.Y. Jan. 10, 2021) [hereinafter *Demopoulos I*] (analyzing the same Trust Agreement at issue in this case and finding that the Arbitration Clause was valid), *R&R adopted*, 2021 WL 796064 (E.D.N.Y. Mar. 2, 2021).

Accordingly, the parties entered into a valid agreement to arbitrate.

### 2.  Whether the Arbitrator or the Court Decides Arbitrability

The question of whether a dispute falls within an arbitration agreement's scope is generally one for the Court to answer, although the parties to an arbitration agreement may contract to empower the arbitrator to determine his or her own jurisdiction.  *See Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120-21 (2d Cir. 2003).  Arbitrability may be resolved by the arbitrator only when the arbitration agreement, "as construed by the relevant state law," contains "*clear and unmistaken evidence . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator.*"  *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (citation omitted)); *see Demopoulos I*, 2021 WL 799330, at *6-7.[3]

Plaintiffs argue that the Trust Agreement's Arbitration Clause, Article XII, "does not evidence a clear and unmistakable intent to refer the issue of arbitrability to arbitration."  (Pl. PI Mem. of Law

---

[3] The Trust Agreement is governed by New York law (Trust Agreement, Art. X(4)), "which follows the same standard as federal law with respect to who determines arbitrability . . . ."  *Contec Corp.*, 398 F.3d at 208 n.1.

at 8.)

Defendants contend that "the question of arbitrability is for the arbitrator given Article XII's choice of the . . . AAA . . . as the arbitral forum." (Def. Op. Mem. of Law at 14 n.12.)[4]

"[W]hen . . . parties explicitly incorporate [into their arbitration agreement] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issue to an arbitrator." *Contec Corp.*, 398 F.3d at 208; *see also DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F. 4th 308, 318-19 (2d Cir. 2021); *Shaw*, 322 F.3d at 120–21, 124-25 (finding arbitrator was to decide questions of arbitrability where arbitration clause required arbitration of "all disputes . . . concerning or arising out of this Agreement" and named the International Chamber of Commerce as the arbitral forum). However, the Arbitration Clause does not explicitly incorporate or even mention the AAA's rules. *Cf. Contec Corp.*, 398 F.3d at 208 (holding that the AAA rules are explicitly incorporated when the arbitration clause provided that "[i]n the event the parties are unable to arrive at a resolution, such controversy shall be determined by arbitration held in the City of Albany, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . or any organization that is the successor thereto . . . ." (citation omitted)); *Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's*, 66 A.D.3d 495, 495 (N.Y. App. Div. Oct. 13, 2009) ("The arbitration agreement at issue requires that '[a]ll disputes and differences arising under or in connection with this [contract] . . . be referred to arbitration under the American Arbitration Association Rules.'" (alteration in original)).

---

[4] To support their argument, Defendants cite to their Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction and In Support of Defendants' Cross-Motion to Compel Arbitration, filed on March 9, 2020 in *Demopoulos v. Curcio*, No. 20-cv-1208 (the motion at issue in *Demopoulos I*, 2021 WL 799330). There, Defendants argued that "[t]he operative AAA rules provide that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement . . . the arbitrator may rule on [arbitrability] objections as a preliminary matter or as part of the final award.'" (*See* Dkt. 18 at 14 in *Demopoulos v. Curcio*, No. 20-cv-1208 (quoting AAA Labor Arbitration Rules, R-3(a), (c)) (alteration in original).)

Instead, the Arbitration Clause provides only that if the Board cannot agree on an impartial arbitrator, "then either the Union Trustees or the Employer Trustees may petition the American Arbitration Association for a list of impartial arbitrators." (Trust Agreement, Art. XII.) While the Arbitration Clause permits the trustees to obtain a list of arbitrators from the AAA, it falls short of explicitly incorporating AAA rules into the Arbitration Clause, including any rule empowering an arbitrator to decide issues of arbitrability. Defendants point to no other provision in the Arbitration Clause to support their contention that the parties intended the arbitrator, rather than the Court, to decide arbitrability.

Because the Arbitration Clause does not contain clear and unmistakable evidence of this intent, the Court shall decide issues of arbitrability. *See Demopoulos I*, 2021 WL 799330, at *6-7 (analyzing the same Trust Agreement at issue in this case and finding that Court should decide issues of arbitrability).

### 3. Whether the Disputes in the Apr. 20, 2020 Notice Fall Within the Arbitration Clause's Scope

Because "arbitration is a matter of contract," the "parties cannot be compelled to arbitrate issues that they have not specifically agreed to submit to arbitration." *Shaw*, 322 F.3d at 120 (citations omitted). "Nevertheless, under the [Federal Arbitration Act], certain presumptions inform the analysis. Specifically, the federal policy in favor of arbitration requires that 'any doubts concerning the scope of arbitrable issues' be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This is unlike "the question [of] *who* should decide arbitrability, [where] there is a presumption that the question should be resolved by the court." *DDK Hotels*, 6 F. 4th at 317 (emphasis in original). Rather, "[w]here the question is whether a given dispute falls within the scope of the arbitration agreement (and is therefore arbitrable), '[a]ny doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration.'" *Id.* (citation omitted).

By serving the Apr. 20, 2020 Notice, Defendants sought to arbitrate two disputes, both related to whether the Fund should assess withdrawal liability against Mar-Can.  The first poses the question: "Whether . . . the Board of Trustees of the Fund[] should approve . . . entering into a retroactive Participation Agreement with Mar-Can . . . avoiding the trigger or assessment of a withdrawal liability against Mar-Can . . ." ?  The second asks, "Whether, by voting against the motion . . . the Union Trustees breached their fiduciary duties to the Local 854 I.B.T. Pension Fund?"  (Apr. 20, 2020 Notice.)

The Arbitration Clause is broad, although "not unlimited."  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (citation omitted).  It directs the parties to arbitrate when "the Board of Trustees is unable to agree upon or to settle *any* of the matters that arise during the administration of this Fund . . . ."  (Trust Agreement, Art. XII (emphasis added)); *see, e.g.,* *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) ("The language in the [collective bargaining agreement], requiring arbitration of '[a]ny dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and Employer have not been able to settle,' constitutes a broad arbitration clause."); *Louis Dreyfus*, 252 F.3d at 225 (finding phrase "[a]ny dispute arising from the making, performance or termination of this [contract]" broad); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (finding phrases "relating to," "in connection with," "or arising from" were substantively the same and did not limit scope of arbitration clause); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 405-06 (S.D.N.Y. 2003) (finding phrase "[claims] arising out of or relating to . . . Account" broad); *see also Demopoulos I*, 2021 WL 799330, at *8 (finding Arbitration Clause at issue in this case to be broad).

The language of the Arbitration Clause does not "suggest an intention by the parties to limit the scope of the clause."  *Louis Dreyfus*, 252 F.3d at 226.  Broad clauses such as this "enjoy a presumption of arbitrability."  *See Sidney v. Verizon Commc'ns*, No. 17-CV-1850 (RJD)(RLM), 2018 WL

1459461, at *3 (E.D.N.Y. Mar. 22, 2018) (citation omitted). "Indeed, where a broad arbitration clause is in play . . . 'in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Pick Quick Food, Inc. v. United Food & Com. Workers Loc. 342*, 952 F. Supp. 2d 494, 498 (E.D.N.Y. 2013) (quoting *AT&T Tech., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted)).

The Arbitration Clause does not require any action—let alone, a valid action—for there to be an arbitrable dispute or disagreement. The Arbitration Clause seeks to have an arbitrator resolve those issues on which the Board itself cannot agree. Here, the members of the Board clearly disagree as to whether the Fund should assess withdrawal liability against Mar-Can. Defendants answer in the negative, contending that rather than assess liability, the Fund should enter into a participation agreement with Mar-Can "to maximize the pension fund's contribution base" in accordance with the recommendation of the Fund's actuary. (Def. Op. Mem. of Law at 5 (citing Ex. B to Pollack Decl. at 2, Dkt. 16-2).) Plaintiffs answer in the affirmative, maintaining that the Trust Agreement precludes entering into a participation agreement, and "Mar-Can has no active drivers [and] the Employer Trustees' proposal would result in no additional contributions to the Fund until and unless Mar-Can resumes covered work." (*See* Pl. PI Mem. of Law at 17.) Whether the Board should assess withdrawal liability against Mar-Can is a matter that the Board "is unable to agree upon or to settle." Therefore, the first issue set forth in the Apr. 20, 2020 Notice "falls squarely within the [A]rbitration [C]lause." *Cotter v. Shearson Lehman Hutton, Inc.*, 126 F.R.D. 19, 20 (S.D.N.Y. 1989).

Similarly, whether "by voting against the motion . . . the Union Trustees breached their fiduciary duties to the Local 854 I.B.T. Pension Fund" is a question on which the trustees also do not agree. (*See* Apr. 20, 2020 Notice.) Plaintiffs do not challenge this second question separately. Rather, their objection to this question is premised on the same argument as the first, that entering into a participation agreement with Mar-Can is "an impossibility under the terms of the Trust Agreement,"

and therefore the Participation Agreement Motion does not involve a matter that arose during the administration of the Fund and is thus not arbitrable. (*See* Pl. PI Mem. of Law at 11.) Because both questions are collateral to the issue of whether the Fund should assess withdrawal liability against Mar-Can or take some other action, the matters are within the scope of the Arbitration Clause.

In considering whether something constitutes "any of the matters that arise during the administration" of the Fund, as required by the Arbitration Clause, the Court looks at the authority given to the Board by the Trust Agreement. *See Stop & Shop*, 407 F. Supp. 2d at 521-22. Calling for a vote on a motion that would require the trustees to act in violation of the Trust Agreement would not be a matter that arose during the administration of the Fund. *See Barrett v. Miller*, 276 F.2d 429, 431 (2d Cir. 1960) (finding that where deadlock provision permitted arbitration of "any question coming before the Trustees for decision," a question calling for an answer that "would require action plainly beyond the powers conferred upon the trustees" would not be one that came before trustees for decision). The trustee making the motion, however, "need not demonstrate that his interpretation that the issue was one the trustees could decide is the correct one" in order for it to be arbitrable, but "he must at least establish that [his interpretation] is a possible one." *Id.* Arbitration may be ordered unless the court "is prepared to say 'with positive assurance that the contract is not susceptible to an interpretation to cover the asserted dispute.'" *See id.* (quoting *Loc. 1912, Int'l Ass'n of Machinists v. U.S. Potash Co.*, 270 F.2d 496, 498 (10th Cir. 1959)).

Plaintiffs argue that "when the NLRB certified the results of the election removing the Union" as Mar-Can employees' representative, Mar-Can no longer qualified as an "Employer" under the Trust Agreement. (Pl. PI Mem. of Law at 10-11.) Therefore, Plaintiffs argue, the Trust Agreement did not allow the Board to enter into a participation agreement with Mar-Can, and the Motion that Defendants made to do so violated the Trust Agreement's terms. (*Id.*)

The Trust Agreement governs Board meetings and voting at those meetings. (*See, e.g.*, Trust

Agreement, Art. IV(1)-(6).)  The Board also has the power to, among other things, "construe the terms and provisions of this Agreement" (Trust Agreement, Art. V(3)(z)), and "establish the policy and the rules pursuant to which this Agreement and Plan are to be operated and administered, including rules relating to the collection of contributions and other payments . . . ."  (Trust Agreement, Art. V(3)(b).)  Under Article V(3)(y) of the Trust Agreement, the Board can "admit to participation in this Fund any Employer that signs a collective bargaining agreement with the Union or other agreement with the Board of Trustees obligating said Employer to make payments to the Fund."  (Trust Agreement, Art. V(3)(y).)  The Trust Agreement defines "Employer" as "any employer that has signed a collective bargaining agreement or other agreement with the Union . . . " (Trust Agreement, Art. I(6)(a)) or "the Union and the Fund or other related organizations, if such organizations are accepted for participation by the Board of Trustees. . . ."  (Trust Agreement, Art. I(6)(b).)

Plaintiffs argue that once Mar-Can's employees withdrew from the union, Mar-Can no longer had a collective bargaining agreement or other agreement with the Union, and therefore, ceased to qualify as an Employer under subsection (6)(a).  (Pl. PI Mem. of Law at 10, 20-21.)  They also assert that it "defies common sense" to interpret the alternative definition of Employer in subsection (6)(b) as encompassing Mar-Can because "Mar-Can is not an 'organization' related to the Union or Fund."  (Plaintiffs' Memorandum of Law in Opposition to Defendants' Mot. to Dismiss ("Pl. Op. Mem. of Law") at 16, Dkt. 20.)  Therefore, because Mar-Can is not an Employer, Plaintiffs argue that the Board cannot admit it to participate in the Fund under Article V(3)(y).  (Pl. PI Mem. of Law at 20-21.)

In support of their argument, Plaintiffs also point out that the Board amended Local 854 Health and Welfare Fund's Trust Agreement (the "Health Fund Trust Agreement"), which contained the same language as Articles I(6)(a) and V(3)(y) of the Trust Agreement, to add that an "Employer" could also mean an employer that entered into a written agreement with the Board of Trustees, not just with the Union.  (*See* Pl. Op. Mem. of Law at 18-19 (citing to "Health Fund Trust Agreement"

Amendment No. 6, Ex. G to Affidavit of Demos P. Demopoulos, Dkt. 21-7).)  Plaintiffs argue that the Board's action shows "that the Trustees saw the amendments as necessary to render participation agreements with employers permissible . . . ."  (Pl. Op. Mem. of Law at 18.)  Without such an amendment, Plaintiffs contend, the Trust Agreement does not permit the Board to enter into a participation agreement with Mar-Can.

Defendants' actions would fall outside the administration of the Fund only if the Court can definitively say that Defendants' proposal was impossible—that is, that Mar-Can *cannot* be admitted to participation in the Fund.  This Court does not need to determine whether Defendants' interpretation of their authority under the Trust Agreement is correct; it only needs to find that it is possibly correct.  *See Barrett*, 276 F.2d at 431.

I agree with Defendants that at least one reasonable interpretation of the Trust Agreement supports their position that the Board can enter into a participation agreement with Mar-Can.  (*See* Def. Op. Mem. of Law at 12.)  Article I(6)(b) contains a definition of Employer which includes "the Union and the Fund or other related organizations," but the Trust Agreement does not define who qualifies as an "other related organization."  While Plaintiffs urge the Court to read subsection (6)(b) to encompass only those organizations that are related to the Union or the Fund, that narrow interpretation is not the only possibility.  Plaintiffs also do not explain which type of organizations would be "related" to the Union or the Fund.  If Mar-Can could qualify as an Employer under Article I(6)(b) as a "related organization," the Board might be able to admit it to participation in the Fund under Article V(3)(y).

Because the terms in the Trust Agreement are ambiguous, I cannot "say with positive assurance" that the Participation Agreement Motion, and by extension, the questions raised in the Apr. 20, 2020 Notice, arose beyond the administration of the Fund and, therefore, fell outside the scope of the Arbitration Clause.

### 4.  Plaintiffs' Additional Arguments of Irreparable Harm

In addition to challenging the arbitrability of the issues presented by the Apr. 20, 2020 Notice, Plaintiffs argue that they are irreparably harmed absent a preliminary injunction because the act itself of serving the Apr. 20, 2020 Notice constituted a breach of Defendants' fiduciary duties and of the Trust Agreement.  (*See, e.g.*, Pl. PI Mem. of Law at 21, 23, 26, 27, 29.)  This argument, however, is premised on Plaintiffs' contention that the conduct proposed in the Apr. 20, 2020 Notice (*i.e.*, entering into a participation agreement with Mar-Can) is not allowed under the Trust Agreement.  As explained above, this is incorrect.

The Apr. 20, 2020 Notice seeks to arbitrate two issues that the parties "are unable to agree" on, and those issues fall within the Arbitration Clause's scope.  Therefore, serving the Apr. 20, 2020 Notice to present these matters for arbitration does not constitute a breach of the Trust Agreement or Defendants' fiduciary duties.

Plaintiffs also argue that they will suffer irreparable harm if they are forced to arbitrate a matter that they did not contract to arbitrate.  (*Id.* at 25.)  Plaintiffs point to no contractual provisions, however, that exclude either of the disputes in the Apr. 20, 2020 Notice or any of the parties from arbitration.[5]  Arbitration is "the preferred method for resolving labor disputes," and "arbitration by itself imposes no [irreparable harm] to the resisting party, except perhaps in 'extraordinarily rare' circumstances."  *Emery Air Freight Corp. v. Loc. Union 295*, 786 F.2d 93, 100 (2d Cir. 1986).  Therefore,

---

[5] Additionally, the cases that Plaintiffs cite in support are inapposite.  In *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) (per curiam), the Second Circuit affirmed the granting of a preliminary injunction of arbitration where an agreement to arbitrate was not with the party seeking the injunction, but with a related company.  *See id.* at 127, 132.  In *Md. Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979 (2d Cir. 1997), the Second Circuit affirmed the granting of a preliminary injunction of arbitration where the parties seeking arbitration were a group of employees that the arbitration clause explicitly excluded from its scope.  *See id.* at 983-84.  Because these employees were excluded from the arbitration agreement, the employer would be irreparably harmed due to the "time and resources [it] would expend in arbitration."  *Id.* at 985.  And in *Sagepoint Fin., Inc. v. Small*, No. 15-CV-0571, 2015 WL 2354330 (E.D.N.Y. May 15, 2015), the District Court granted a preliminary injunction where, *inter alia*, there was no written arbitration agreement between the parties.  *Id.* at *3.

Plaintiffs cannot establish that the time and resources they would expend in arbitration constitute irreparable harm.  Plaintiffs' argument that the Fund will be irreparably harmed by having to arbitrate a matter that "properly belong[s] in federal court under Section 301 of the [LMRA]" fails for the same reasons.  (*See* Pl. PI Mem. of Law at 12.)  Because the issues in the Apr. 20, 2020 Notice are arbitrable, Defendants were not required to file suit in federal court to address them.

*    *    *

Accordingly, I find that the disputes set forth in the Apr. 20, 2020 Notice are subject to arbitration pursuant to the Trust Agreement and that Plaintiffs have not demonstrated that they would be irreparable harmed if compelled to arbitrate them.

### B.  Likelihood of Success on the Merits

The second part of the preliminary injunction test can be met through two alternative means: by showing a likelihood of success on the merits of their case, or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts.*, 598 F.3d at 35 (citation omitted).  Plaintiffs argue only that they are likely to succeed on the merits.  They present no arguments that there are sufficiently serious questions going to the merits.  (*See* Pl. PI Mem. of Law at 26-27.)

Plaintiffs argue that they are likely to succeed on the merits, in that (1) the Apr. 20, 2020 Notice violated the Trust Agreement by seeking to arbitrate that which cannot be arbitrated, that is, the Participation Agreement Motion which was an impossibility under the Trust Agreement, and (2) by making the Participation Agreement Motion and serving the Apr. 20, 2020 Notice, Defendants violated various fiduciary duties under ERISA.  (*See id.* at 27; *see also* Compl. ¶¶ 63-64 (referencing §404(a)(1)(D) duty to act in accordance with Trust Agreement); ¶¶ 66-72 (referencing §404(a)(1)(B) duty to act with "care, skill, prudence, and diligence"); ¶¶ 74-77 (referencing §404(a)(1)(A) duty to act solely in interest of participants and beneficiaries); ¶¶ 79-85 (referencing §405 liability for fiduciary

18

breaches of another).)

As explained above, Plaintiffs' arguments regarding the impossibility of the Board's admitting Mar-Can to the Fund through a participation agreement are unpersuasive.

As support for their argument that Defendants violated their fiduciary duties under ERISA, Plaintiffs only state in a conclusory manner that "in bringing the proposal and Notice, the Employer Trustees violated their fiduciary duties under sections 404(a)(1)(A), (B) and (D) of ERISA, by placing their interests as employers over their duty as trustees to assess and collect withdrawal liability and protect the corpus of the Funds for its participants and beneficiaries, and that Curcio and Barrett are liable as co-fiduciaries for Cassese's self-dealing actions in authorizing the Notice under ERISA section 405 and 406(b)." (Pl. PI Mem. of Law at 27.)

Defendants contend that they had a valid basis for voting for the Participation Agreement Motion and that Cassese did not participate in the voting. (*See* Def. Op. Mem. of Law at 5-6, 13-14, 16.) During the March 31, 2020 Board meeting, "the Fund's actuary . . . expressed support for a participation agreement several times, noting that its increased potential for more contributions due to a larger participant base would ultimately prove more beneficial to the Fund than assessing withdrawal liability, and that it was generally better for the Fund to have current contributions than a *claim* for withdrawal liability." (*Id.* at 4 (emphasis in original) (citing Declaration of John Curcio ¶ 5, Dkt. 17).) Defendants note that they sent Plaintiffs a follow-up email after the meeting, "memorializ[ing] their rationale" for making and voting for the Participation Agreement Motion. (*Id.* at 5.)

As for the Apr. 20, 2020 Notice, the cases cited by Plaintiffs do not support their contention that serving such a notice constitutes a violation of ERISA. (*See* Pl. PI Mem. of Law at 24.) Rather, the ERISA violations involved in those cases pertain to undisclosed or alleged financial self-dealing or misuse of pension funds. *See, e.g.*, *Liss v. Smith*, 991 F. Supp. 278 (S.D.N.Y. 1998) (holding that

plaintiff was entitled to summary judgment on claims that defendants breached their fiduciary duties by, among other things, failing to collect delinquent contributions from employees, failing to enact an investment policy, failing to hire an investment adviser or manager, and making repeated investments without any independent investigation into the merit of the investments); *Chao v. Docster*, No. 01-CV-827 (NAM)(DEP), 2006 WL 1593521, at *1, *7, *9 (N.D.N.Y. Mar. 31, 2006) (holding that plaintiff was entitled to summary judgment on the claim that defendants breached their ERISA duties when they used employee 401(k) contributions to cover corporate expenses because the corporation, of which the defendants were corporate officers, was having financial difficulties). While Plaintiffs assert that Cassese engaged in self-dealing, he abstained from voting on the Participation Agreement Motion involving his company. Moreover, as to their argument that by signing the Apr. 20, 2020 Notice Cassese and the other Defendants breached their fiduciary duty, Plaintiffs cite no cases establishing that availing oneself of a contractual dispute resolution procedure to resolve differences related to fund administration violates ERISA.

Accordingly, I find that Plaintiffs have not established the likelihood of success on the merits of their claims that serving the Apr. 20, 2020 Notice and making the Participation Agreement Motion violated ERISA or the Trust Agreement.

### C. Public Interest

Plaintiffs argue that their requested injunction is in the public interest because it "will ensure compliance with ERISA, a statute designed to ensure the protection of benefits for participants and beneficiaries in employee pension and welfare plans." (Pl. PI Mem. of Law at 27.) This argument fails to explain why permitting the arbitration to proceed will not ensure compliance with ERISA, given that ERISA claims are arbitrable. *See Bird v. Shearson Lehman/Am. Express*, 926 F.2d 116, 122 (2d Cir. 1991) (holding that ERISA claims may be arbitrated and finding that the district court "erred in denying appellants' motion to compel arbitration of appellees' ERISA claim"). Denying the motion

for preliminary injunction is also appropriate considering the "strong public policy in favor of arbitration." *Zheng v. Gen. Elec. Co.*, No. 15-CV-1232 (TJM)(CFH), 2016 WL 11605145, at \*5 (N.D.N.Y. Nov. 16, 2016). Issuance of a preliminary injunction against the arbitration of the matters in the Apr. 20, 2020 Notice is, thus, not in the public interest.

Accordingly, I respectfully recommend that Plaintiffs' motion for a preliminary injunction to prevent Defendants from arbitrating the issues in the Apr. 20, 2020 Notice be denied, and permit Defendants to pursue arbitration of the questions in the Apr. 20, 2020 Notice.

## **DEFENDANTS' CROSS MOTION TO DISMISS AND COMPEL ARBITRATION**

### I. **Defendant's Cross Motion to Dismiss Plaintiffs' Fifth Cause of Action**

#### A. *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, the Court must take all the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169 (2d Cir. 2015).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Naked assertion[s]" absent "further factual enhancement" are also inadequate in successfully stating a claim. *Id.* at 557.

### B. Analysis

Plaintiffs' fifth cause of action alleges that Defendants violated Section 301 of the LMRA, 29 U.S.C. § 185, "[b]y bringing the [Participation Agreement Motion], voting in favor of it, and by sending the Notice of Intention to Arbitrate about a matter not arising during the administration of the Fund . . . ."  (Compl. ¶ 95.)

Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Niagara Hooker Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1375 (2d Cir. 1991) (quoting 29 U.S.C. § 185(a).  As relevant here, a claim under Section 301 "must allege: 1) a violation; 2) of a contract; 3) between an employer and a labor organization."  *Bannerjee v. Papadakis*, 583 F. Supp. 757, 760 (E.D.N.Y. 1984).  The labor organization must represent employees "in an industry affecting commerce."  29 U.S.C. § 185(a).

Plaintiffs argue that all requirements have been met as follows: (1) Defendants violated the Trust Agreement by proposing that the trustees sign a participation agreement with Mar-Can; (2) the Trust Agreement is a contract pursuant to Section 301 of the LMRA; and (3) the Trust Agreement was signed by all trustees, the Union (which is a labor organization), and contributing employees.

Defendants argue that Plaintiffs fail to state a claim because there was no violation of the Trust Agreement "[b]ecause the Board is empowered to enter into a participation agreement with Mar-Can (or any other employer) . . . ."  (Def. Op. Mem. of Law at 24.)  However, to state a claim under Section 301, Plaintiffs need only plausibly allege a violation of the Trust Agreement.

Plaintiffs have plausibly alleged that the Trust Agreement was violated.[6]   Under the Trust Agreement, the duties of the Board include "administer[ing] this Agreement and Plan for the exclusive benefit of the Participants and Beneficiaries." (Trust Agreement, Art. V(3)(a).) Plaintiffs argue, among other things, that Defendants served the Apr. 20, 2020 Notice and made the Participation Agreement Motion "without a full actuarial analysis of [the participation agreement's] effects on the Fund, an examination of the likelihood of Mar-Can going out of business or losing assets and its effect on the analysis, or even an actual proposed participation agreement to review . . . ." (Compl. ¶ 70.) Plaintiffs further allege that Defendants' motivation for bringing and voting for the Participation Agreement Motion was to "further[] Cassese's attempt to avoid having his company assessed withdrawal liability," rather than a concern for the interests of the participants and beneficiaries of the Fund. (*See id.* ¶ 82.)

In addition, the Trust Agreement is a contract between certain specified employers and the Union. *See Whelan v. Colgan*, 602 F.2d 1060, 1061 (2d Cir. 1979) ("Section 301 jurisdiction is not limited to collective bargaining agreements," but can also include trust agreements.).  And the Union is a "labor organization" in an industry affecting commerce within the meaning of the LMRA.  *See* 29 U.S.C. §§ 152(5), 142(1).[7]

Accordingly, Plaintiffs have plausibly alleged a violation of Article V(3) of the Trust Agreement, which requires that the Fund be administered for the exclusive benefit of the Fund's

---

[6] This conclusion does not alter my determination that Plaintiffs' claims are unlikely to succeed.  *See supra* Part II.B.  While Plaintiffs have not demonstrated that they will likely succeed in establishing that the Participation Agreement Motion violates the Trust Agreement such that a preliminary injunction enjoining arbitration of the issues in the Apr. 20, 2020 Notice is warranted, Plaintiffs have satisfied the lower standard required to withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See, e.g., Benitez v. King*, 298 F. Supp. 3d 530, 536 (W.D.N.Y. 2018) ("The standard for demonstrating a 'likelihood of success on the merits,' . . . is far more demanding than the plausibility standard applied to survive dismissal for the failure to state a claim at the pleading stage."); *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957(ADS)(AKT), 2017 WL 6459464, at *8 (E.D.N.Y. Dec. 15, 2017) ("[T]he showing required for [preliminary injunction] motions is higher than one to overcome a motion to dismiss.").

[7] An "industry affecting commerce" is defined as "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce." 29 U.S.C. § 142(1).

participants and beneficiaries; and that the dispute between the employer and union trustees is over this and other violations of the Trust Agreement. Additionally, the Trust Agreement is a contract of the type described in LMRA § 301. Plaintiffs have therefore plausibly alleged a claim under LMRA § 301 sufficient to withstand Defendants' motion to dismiss.

## II. Defendants' Cross Motion to Compel Arbitration

Defendants also seek, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), to compel Plaintiffs to arbitrate not just the matters in the Apr. 20, 2020 Notice but all five claims contained in the Complaint.

### A. *Legal Standard*

Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "Once a party petitions to compel arbitration, '[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (quoting 9 U.S.C. § 4).

Under the FAA, a contract provision providing for arbitration of controversies arising out of the contract "shall be valid, irrevocable, and enforceable." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (quoting 9 U.S.C. § 2). The FAA "enunciates 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Dylan 140 LLC v. Figueroa*, No. 19-CV-2897 (LAK)(DF), 2019 WL 12339639, at *5 (S.D.N.Y. Nov. 8, 2019) (quoting *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004)).

In determining whether to compel arbitration, the Court weighs: "(1) whether the parties agreed to arbitrate; (2) whether the plaintiff's claims fall within the scope of that agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable." *Murphy v. Canadian Imperial Bank of Com.*, 709 F. Supp. 2d 242, 245-46 (S.D.N.Y. 2010). Related to these issues is whether the parties "clearly and unmistakably" agreed for an arbitrator to decide issues of arbitrability. *See Jillian*, 882 F. Supp. 2d at 365. The party moving to compel arbitration has the initial burden of establishing that a valid arbitration agreement existed. *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016). If the Court finds that all of a plaintiff's claims are arbitrable, it must issue a "stay of proceedings when all claims are referred to arbitration and a stay [is] requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015).

### B. Analysis

Because the underlying dispute presents a federal question, namely whether Plaintiffs are entitled to relief under ERISA and the LMRA, this Court indisputably has jurisdiction over this matter. *See Badgerow v. Walters*, 142 S. Ct. 1310, 1314 (2022) ("If the underlying dispute falls within the court's jurisdiction—for example, by presenting a federal question—then the court may rule on the petition to compel . . . regardless whether the petition alone could establish the court's jurisdiction.").

This Court has already determined that (1) by agreeing to the Arbitration Clause in the Trust Agreement, the parties entered into a valid agreement to arbitrate, and (2) because the Arbitration Clause does not contain clear and unmistakable evidence that the parties intended that an arbitrator decide issues of arbitrability, the Court shall decide issues of arbitrability. *See supra* Parts II.A.1 and A.2; *Demopoulos I*, 2021 WL 799330, at *5-6. I therefore analyze only whether Plaintiffs' claims fall within the scope of the Arbitration Clause and whether Congress intended the claims to be non-arbitrable.

25

### 1. Whether Plaintiffs' Claims Fall Within the Arbitration Clause's Scope

As stated above, the Arbitration Clause is broad. *See supra* Part II.A.3; *see also Demopoulos I*, 2021 WL 799330, at *7-8. "With that determination, '"there arises a presumption of arbitrability" and arbitration of even a collateral matter will be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it."'" *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002) (quoting *Louis Dreyfus*, 252 F.3d at 224 (citation omitted)). When parties craft a broad arbitration clause, "presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated." *Id.* (quoting *Louis Dreyfus*, 252 F.3d at 225 (citation omitted)).

Plaintiffs' first four causes of action allege that Defendants breached their fiduciary duties under ERISA. The alleged breaches relate directly to the questions posed in the Apr. 20, 2020 Notice regarding whether the Board has the power to enter into a participation agreement with Mar-Can under the Trust Agreement.

The dispute over these questions arose during the administration of the Fund. *See supra* Part II.A.3. Therefore, whether any fiduciary duties were breached pursuant to the dispute is a collateral matter that also falls within the scope of the Trust Agreement's broad Arbitration Clause. *See, e.g.*, *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997) (finding fraud and unjust enrichment claims "touched matters" involved in agreement containing arbitration clause); *Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, No. 03-CV-1162 (WHP), 2003 WL 22024070, at *5 (S.D.N.Y. Aug. 28, 2003) (finding breach of fiduciary duty claims are collateral matters falling within scope of arbitration agreement).

Plaintiffs' fifth claim, that Defendants breached the Trust Agreement itself, also falls within the scope of the Arbitration Clause. Matters that "implicate[] issues of contract construction or the parties' rights and obligations under it" are arbitrable when a contract employs a broad arbitration

clause. *ACE Cap.*, 307 F.3d at 34 (citation omitted); *see also Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machs., Loc. Union 550*, 167 F.3d 764, 768 (2d Cir. 1999) (finding LMRA claim within scope of arbitration clause); *Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*, 633 F. Supp. 2d 109, 116 (S.D.N.Y. 2009) (finding breach of contract claim fell within contract's narrow arbitration clause).

### 2. Whether Congress Intended the Claims to be Non-Arbitrable

Although there is a presumption favoring arbitration of Plaintiffs' federal statutory claims, "Congress . . . may override the presumption favoring arbitration agreements by a contrary provision in another statute." *Bird*, 926 F.2d at 119. After the moving party has established the existence of a valid arbitration agreement, "[t]he burden of demonstrating such congressional intent rests with the party opposing arbitration." *Id.*

Plaintiffs have failed to meet their burden of demonstrating that Congress intended to preclude arbitration of claims brought under ERISA. Enforcing the Arbitration Clause is consistent with ERISA's text and legislative history, which suggests that "ERISA's purpose is to secure guaranteed pension payments to participants by insuring the honest administration of financially sound plans." *Id.* at 120 (quoting *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 914 (2d Cir. 1982)). "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). "Arbitration is not inconsistent with the underlying purposes of ERISA" and "statutory claims arising under ERISA may be the subject of compulsory arbitration." *Id.* at 122. Additionally, "parties may provide by agreement that such claims will be arbitrated." *Id.* Plaintiffs "suggest no reason why the substantive rights guaranteed by ERISA will be jeopardized if the arbitration agreement is enforced." *Id.* at 121. Thus, Plaintiffs' first four causes of action should be arbitrated.

Plaintiffs' fifth cause of action under the LMRA should also be arbitrated. One of the main purposes of the LMRA "is to encourage resolution of employment-related disputes through the grievance and arbitration procedures negotiated in a [collective bargaining agreement] . . . ." *Cantave v. Uptown Comm'ns & Elec. Inc.*, No. 14-CV-01838 (ERK), 2015 WL 4716539, at *5 (E.D.N.Y. Aug. 7, 2015); *see also Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 455 (1957) (The LMRA "expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way."). When the dispute underlying an LMRA claim is within the scope of a trust agreement's arbitration clause, as it is here, arbitration of that claim is not inconsistent with the LMRA's purpose. *See, e.g., Frontier Comm'ns of N.Y., Inc. v. Int'l Bhd. of Elec. Workers*, No. 07-CV-10327 (GEL), 2008 WL 1991096, at *2 (S.D.N.Y. May 6, 2008) (noting that a court has authority to compel arbitration under LMRA § 301 where agreement's arbitration clause covers the asserted dispute); *Lockport Mem'l Hosp. v. United Pro. Nurses Ass'n*, No. 02-CV-0771A (SR), 2004 WL 1459226, at *2 (W.D.N.Y. June 25, 2004) ("[A] grievance-arbitration procedure in a collective bargaining agreement is enforceable pursuant to § 301 of the [LMRA].").

Accordingly, claims brought under the LMRA are arbitrable, and Plaintiffs have not met their burden of demonstrating otherwise.

### 3. Whether to Stay or Dismiss Plaintiffs' Claims

Defendants do not explicitly request that the proceedings be stayed pending arbitration or that the case be dismissed. However, having found that all of Plaintiffs' claims are arbitrable, I respectfully recommend that this action be stayed pending the arbitrator's decision. *See Katz*, 794 F.3d at 345 ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

28

## <u>CONCLUSION</u>

Based on the foregoing, I respectfully recommend that: (1) Plaintiffs' motion for a preliminary injunction be denied, and Defendants be permitted to arbitrate the questions recited in the Apr. 20, 2020 Notice; (2) Defendants' motion to dismiss Plaintiffs' fifth cause of action be denied; and (3) Defendants' motion to compel arbitration of all claims be granted.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          February 6, 2023